NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VINCENT MCGEARY, *Plaintiff/Appellee,*

*v.*

CITY OF SEDONA, an Arizona municipal corporation, and the COUNCIL
OF THE CITY OF SEDONA, a legislative body, *Defendants/Appellants.*

No. 1 CA-CV 22-0076
FILED 10-06-2022

Appeal from the Superior Court in Coconino County
No. S0300CV201900120
The Honorable Cathleen Brown Nichols, Judge

**REVERSED**

COUNSEL

Vincent McGeary, Sedona
*Plaintiff/Appellee*

Sedona City Attorney's Office, Sedona
By William A. Kunisch, Kurt W. Christianson
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        The City of Sedona and the Council of the City of Sedona appeal from the superior court's orders vacating the grant of a conditional use permit and entering judgment for Vincent McGeary. We conclude that the superior court erred and reverse.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In January 2017, a water company applied for a conditional use permit with the City of Sedona ("City"), seeking approval to construct a water tank and pumping plant on residential land. The water company held public meetings with residents to discuss the project.

¶3        In August 2018, the City's Planning and Zoning Commission held its first public hearing on the permit application. In preparation for the hearing, department staff submitted a report describing the findings required by the Sedona Land Development Code ("Development Code").[1] The report explained that under Development Code § 402.06, the Commission would grant a permit only if 1) the project agreed with the Development Code's objectives and the zoning district purpose in which it was proposed, 2) granting the permit would "not be materially detrimental to the public health, safety or welfare," 3) the proposed use was "reasonably compatible with the types of use permitted in the surrounding area," 4) the proposed use would comply with the Development Code, and 5) any proposed expansion or change would be "no more deleterious" than the current use.

¶4        The staff report detailed its findings on how the water company's proposal met each requirement. In the report, the staff explained

---

[1]        Because the water company applied for the permit in 2017, we apply the Development Code effective before Sedona's 2018 Development Code update.

that the proposal met the first requirement because the water tank was to be built in a residential area and was "located to support the overall purpose for promoting and preserving residential development within the community." Staff members noted that water tanks and public utilities are listed as conditional uses in all Sedona residential districts.

¶5 Next, the report noted that under the Development Code's second requirement, the Commission must consider any potential property damage, nuisance, hazard to persons or property, and impact on the surrounding area from traffic. The report explained that the tank was designed to be mostly subterranean, fully enclosed, and soundproof to fit the neighborhood's residential character. The structure also would be "dark sky compliant." The water company was aware of potential flooding issues and designed the project to mitigate those risks. The report anticipated no potential nuisance, hazard, or unusual traffic after construction.

¶6 Under the third requirement, the report explained that the water company considered the surrounding residential properties and included a chart showing how the proposed project differed from standard residential development. The report concluded that "impact to the neighboring properties [would be] minimized."

¶7 Under the fourth requirement, the report noted that by complying with all the recommended conditions of approval, the project would comply with all applicable provisions of the Development Code. Finally, the fifth requirement did not apply because the project was to be constructed on a vacant site. Thus, there would be no expansion or change from previous use.

¶8 The water company presented its case for approval at the August hearing. The Commission then discussed the project with the water company representatives before welcoming comments from the public. After further discussion, the Commission expressed lingering concerns and voted to continue the hearing until October with guidance for the water company on redesigning the project.

¶9 The October hearing began with a notice that all materials from the August meeting were "part of the record, including staff's analysis . . . with regard to this proposal's compliance with the criteria and findings for a [conditional use permit]." The water company presented several design changes and answered questions from the Commission. The Commission then allowed the public to comment before putting the matter to a vote. A commissioner moved for the permit's approval "based on

compliance with all ordinance requirements and satisfaction of the Conditional Use Permit findings and applicable Land Development Code requirements and conditions as outlined in the staff report." The Commission voted to grant the permit.

¶10          McGeary, a Sedona resident, appealed the Commission's decision to the City Council, and the Council held a special meeting. The Council addressed McGeary's concerns, one of which was that the Commission did not properly make the required findings under Development Code § 402.06. Staff noted that although Development Code § 402.06 "enumerates the findings to be made, . . . it does not prescribe the format in which those findings are to be expressed." Staff explained that the Commission adopted the findings provided in the staff report when it voted to approve the permit. The Council then affirmed the Commission's decision to grant the permit "based on compliance with all ordinance[] requirements and satisfaction of the Conditional Use Permit findings and applicable Land Development Code requirements and the conditions as amended by the Planning and Zoning Commission."

¶11          McGeary filed a special action with the superior court, alleging, *inter alia*, that the Commission and Council failed to make independent findings required by the Development Code and lacked the authority to adopt the staff report's findings. The court determined from the record that it could not resolve whether the decision to grant the permit was arbitrary or capricious because the Commission and Council "did not specifically state" the findings they considered. Thus, the court could not "decide the merits of the underlying dispute" because the lack of specific findings "prevented meaningful judicial review," so it vacated the grant of the permit and remanded the case to the Commission and Council for further explanation.

¶12          McGeary asked the court to enter final judgment, arguing that the court lacked the authority to remand the case to a municipality. After briefing on the issue, the court vacated the remand portion of its order and entered final judgment for McGeary.

¶13          The City of Sedona and the Council appealed, and we have jurisdiction under A.R.S. §§ 12-2101(A)(1) and -120.21(A)(1).

**DISCUSSION**

¶14          On appeal from a special action started in the superior court, we first determine whether the superior court accepted jurisdiction and decided the claim's merits. *Cranmer v. State*, 204 Ariz. 299, 301, ¶ 7 (2003). If

it did, we then review its decision for an abuse of discretion and its legal conclusions *de novo*. *Id.*

¶15        Despite the court's determination that it could not "decide the merits of the underlying dispute," it ultimately entered judgment for the plaintiff. We, therefore, conclude that the superior court accepted jurisdiction and decided the merits of the claim, and we will review its decision for an abuse of discretion. *See Cranmer*, 204 Ariz. at 301, ¶ 7.

**A.        The Court Abused Its Discretion by Failing to Find Credible Evidence Supported the Decision to Grant the Permit.**

¶16        Neither the superior court nor this Court may substitute its opinion of the facts for that of the Commission. If there is credible evidence to support the Commission's decision, it must be affirmed. *Pingitore v. Town of Cave Creek*, 194 Ariz. 261, 264, ¶ 18 (App. 1998).

¶17        Appellants argue that the superior court erred because the Commission's decision was supported by substantial evidence. The Commission reviewed presentations and written reports, held public hearings, and then adopted the findings outlined in the staff report. McGeary counters that the Commission and Council failed to make their own findings as required by the Development Code. He also argues that the Commission and Council were prohibited from adopting findings from the staff report, and the findings in the staff report were arbitrary and capricious.

¶18        Section 402.06 of the Development Code requires the Commission to make five specific findings before granting a conditional use permit. The staff report prepared in advance of the public meetings explained each finding in detail. After the October meeting, the Commission voted to grant the permit "based on . . . satisfaction of the Conditional Use Permit findings . . . as outlined in the staff report." The Commission adopted the required findings from the staff report before and in support of its vote to grant the permit.

¶19        McGeary argues that the Development Code prohibits the Commission from adopting findings because it requires the Commission, not department staff, to make the findings. He also contends that, by purporting to adopt staff findings, the Commission essentially delegated its decision-making function to the department. But McGeary identifies no provision of the Development Code that expressly prohibits the Commission's method of making the required findings. That department staff drafted the report does not strip the Commission of its independent

choice to adopt the findings from the report. Had the Commission disagreed with the staff recommendation, it had the discretion to reject the staff findings in the report. But by adopting the findings, the Commission made the findings as required by the Development Code.

¶20 McGeary argues it is arbitrary and capricious to adopt pre-hearing findings as the basis for a decision, contending that Appellants' reliance on the staff report "concedes that the Commission failed to make [the findings] after the hearing and before granting the [permit]." We disagree.

¶21 The Commission made the required findings when it voted to adopt those outlined in the report, not when it was drafted. The Commission also considered the comments from the August and October hearings before adopting the findings. That the Commission felt no need to deviate from the staff report does not mean that it did not consider the content of the hearings before reaching its conclusions. And to the extent McGeary implies the Commission held the hearings as a formality, the record instead reflects robust discussion at the hearings. The Commission's decision to continue the August hearing for the water company to modify its plans further suggests serious independent consideration. The Commission made the findings required by the Development Code.

¶22 McGeary also argues that the findings were substantively arbitrary and capricious. He first contends the Commission failed to make, or erroneously made, the first required finding under Development Code § 402.06. The Commission had to find "[t]hat the proposed location of the conditional use is in accordance with the objectives of [the Development Code] and the purpose of the zoning district in which the site is located." Development Code § 402.06(A). Because the proposed location was in a residential area, the purpose of the zoning district was to promote and preserve low-density single-family residential development. Development Code § 605.01. The Commission found that "[t]he proposed public utility and public service substation, water tank, and pumping plant is located to support the overall purpose for promoting and preserving residential development within the community." The Commission made the first required finding.

¶23 McGeary argues the finding was erroneous because there is no evidence that the project will promote or preserve residential development in the district. But the Commission noted that this type of project is a conditional use in all of Sedona's residential districts, which evidences its necessity in residential development. And we will not

substitute our opinion on that fact for the Commission's. *See Pingitore*, 194 Ariz. at 264, ¶ 18.

**¶24**         McGeary next argues that it was arbitrary and capricious for the Commission to ignore the project's construction-related traffic. Under Development Code § 402.06(B), the Commission had to find that granting the permit would not be detrimental to public health, safety, or welfare. One of the "factors to be *considered*" when making this finding was "[a]ny impact on surrounding area resulting from unusual volume or character of traffic." Development Code § 402.06(B)(3) (emphasis added). McGeary correctly notes that the staff report findings contain no discussion about construction-related traffic. But the October hearing shows the Commission thoroughly discussed construction-related traffic with the water company and the public. There is, therefore, substantial record evidence that the Commission "*considered*" this factor before making the second required finding.

**¶25**         McGeary also argues the Commission failed to analyze whether the characteristics of the proposed use were reasonably compatible with the types of use permitted in the surrounding area. *See* Development Code § 402.06(C). But substantial evidence supports that finding because, as mentioned, the Commission found that public utilities and water tanks are necessities in residential areas.

**¶26**         McGeary also contends the Commission made no finding under § 402.06(D), which requires the Commission to find that the proposed use would comply with the applicable provisions of the Development Code. The report provided, and the Commission found, that "[b]y complying with all recommended Conditions of Approval, this project will be in compliance with the applicable provisions of the Land Development Code." McGeary complains that the report mentioned no other provisions of the Development Code or other city ordinances. The Development Code does not require the Commission to list every code provision with which the project complies. And McGeary identifies no specific requirement with which the project would not comply such that the Commission's finding would be clearly erroneous.

**¶27**         Finally, McGeary argues that the Council failed to make the same § 402.06 findings when it affirmed the Commission's decision. The Council announced the decision "based on . . . satisfaction of the Conditional Use Permit findings . . . as amended by the Planning and Zoning Commission." Thus, the Council adopted the Commission's findings when deciding to affirm the Commission's decision.

¶28 Because there is substantial record evidence to support the Appellants' decision to grant the permit, the superior court had to affirm. *See Pingitore*, 194 Ariz. at 264, ¶ 18. The court abused its discretion by vacating the Appellants' decision.

**B. The Court Abused Its Discretion by Entering Judgment for McGeary Despite Concluding that He Did Not Meet His Burden.**

¶29 We also reverse for a second reason. The superior court was tasked with determining whether the Commission or Council acted arbitrarily or capriciously or abused their discretion when they granted the permit. *See Pingitore*, 194 Ariz. at 264, ¶ 18. The superior court had to affirm if there was credible evidence to support the Commission and Council's decisions. *Id.* The superior court recognized that the decision to grant the permit was presumptively valid and that "one who attacks it . . . carries the burden of showing the decision to be against the weight of the evidence, unreasonable, erroneous, or illegal as a matter of law." *See Ivancovich v. City of Tucson Bd. of Adjustment*, 22 Ariz. App. 530, 535 (1974).

¶30 The court found that it could not "determine from the record . . . if the Commission's decision and the Council's decision to grant the [permit] was or was not arbitrary, capricious, unlawful, or not supported by substantial evidence." Yet the court entered judgment for McGeary. This was legal error. Based on the superior court's order, McGeary did not meet his burden because the court did not find that the decision to grant the permit was arbitrary, capricious, or an abuse of discretion. The court was therefore required to affirm, and it abused its discretion by vacating the grant of the permit.

**CONCLUSION**

¶31 We reverse the superior court's orders vacating the Appellants' grant of the conditional use permit.

