NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

STATE OF ARIZONA, *Appellee,*

*v.*

FRANCISCO TORRES, *Appellant.*

No. 1 CA-CR 13-0756
FILED 06-17-2014

_____

Appeal from the Superior Court in Navajo County
No. S0900CR201200693
The Honorable Robert J. Higgins, Judge

**AFFIRMED**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Colby Mills
*Counsel for Appellee*

The Rigg Law Firm, P.L.L.C., Pinetop
By Brett R. Rigg
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maurice Portley and Judge Andrew W. Gould joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**       Francisco Torres appeals his convictions and sentences for kidnapping, aggravated assault, and aggravated domestic violence. Torres argues the charge of aggravated assault was duplicitous; the trial court erred when it sentenced him as a category two repetitive offender and when it imposed consecutive sentences; and the court erred when it admitted evidence of his paternity of two of the victim's children.[1]  For the reasons that follow, we affirm Torres's convictions and sentences.

**BACKGROUND[2]**

**¶2**       Torres is the father of the victim's three children.  On the date of the incident, the victim attempted to leave Torres's home as she and Torres argued.  When the victim got outside, Torres grabbed the victim and choked her until she lost consciousness and collapsed to the ground.  When the victim regained consciousness, she started to scream. Torres grabbed the victim, dragged her back into his home, and told her he was going to "get rid of" her.  Torres eventually got on top of the victim as she lay on the floor and choked her again until she lost

---

[1]       Torres identifies a fifth issue in his list of "issues presented for review," but does not address that issue within his opening brief.  The failure to argue a claim on appeal constitutes abandonment and waiver of that claim.  *State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995).

[2]       "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998) (citation omitted).  In our review of the record, we resolve any conflict in the evidence in favor of sustaining the verdict.  *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).  We do not weigh the evidence, however. That is the function of the jury.  *See id.*

consciousness. When the victim regained consciousness, Torres apologized and allowed her to leave, but they continued to argue as she did so.

¶3 A jury convicted Torres as indicated above. The jury also acquitted him of a second count of aggravated domestic violence and two counts of influencing a witness. The trial court sentenced Torres to presumptive prison terms of 9.25 years for kidnapping, 4.5 years for aggravated assault, and 2.25 years for aggravated domestic violence. The court ordered the sentences for kidnapping and aggravated assault to run concurrently, but ordered the sentence for aggravated domestic violence to run consecutive to the sentence for kidnapping. We have jurisdiction over Torres's timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A) (West 2014),[3] 13-4031, and 13-4033.

## ANALYSIS

I.      *The Charge of Aggravated Assault*

¶4 The amended charge of aggravated assault read:

### COUNT TWO

### AGGRAVATED ASSAULT/DV, A CLASS 4 FELONY

On or about August 14th, 2012, in the vicinity of 1206 Short Street, Winslow, Navajo County, Arizona, **Francisco Torres**, recklessly caused any physical injury to [the victim] and intentionally or knowingly impeded [her] normal breathing or circulation of blood by applying pressure to the throat or neck or by obstructing the nose and mouth either manually or through the use of an instrument, and any of the circumstances exists that are set forth in § 13-3601(A), paragraphs 1, 2, 3, 4, 5 or 6, to wit: <u>outside the residence of 1206 Short Street</u>, in violation of ARS §§ 13-1204(B), 13-3601, 13-701, 13-702, 13-801, a class 4 felony.

(Emphasis in original.)

---

[3]      We cite the current version of the statutes unless changes material to our decision have occurred since the relevant date.

¶5          Torres argues this charge was duplicitous because it did not allege which act of choking was the basis of the aggravated assault and, therefore, it created the risk of a non-unanimous jury verdict.

¶6          A charging document is duplicitous if it charges separate crimes in the same count.  *State v. Hamilton*, 177 Ariz. 403, 410, 868 P.2d 986, 993 (App. 1993).  Courts prohibit duplicitous charging documents "because they fail to give adequate notice of the charge, present a hazard of a non-unanimous jury verdict, and make a precise pleading of double jeopardy impossible in the event of a later prosecution."  *Id.* (citation omitted).  We review *de novo* whether a charging document is duplicitous. *State v. Ramsey*, 211 Ariz. 529, 532, ¶ 5, 124 P.3d 756, 759 (App. 2005).

¶7          We find no error.  First, the charge was not duplicitous.  The victim testified about two choking incidents in which she lost consciousness – one that occurred outside the residence and one that occurred inside the residence.  The charge alleged Torres committed aggravated assault based solely on events that occurred "<u>outside the residence.</u>"  That the victim testified Torres choked her outside "again" when he changed his and/or the victim's physical positions during the attack outside the residence is not evidence of a separate and distinct incident of choking that raises the specter of duplicity.[4]  A charging document is legally sufficient if it informs the defendant of the essential elements of the charge, is sufficiently definite to permit the defendant to prepare to defend against the charge, and affords the defendant protection from subsequent prosecution for the same offense.  *State v. Rickard-Hughes*, 182 Ariz. 273, 275, 895 P.2d 1036, 1038 (App. 1995).  The charge of aggravated assault was sufficient to serve these purposes.

¶8          Second, even if we assume *arguendo* that the charge was duplicitous, there is still no error because Torres suffered no harm.  To prevail based on an arguably duplicitous charging document, a defendant must demonstrate actual prejudice.  *Hamilton*, 177 Ariz. at 410, 868 P.2d at 993.  The jury instruction on aggravated assault required the jury to find the assault occurred "outside the residence of 1210½ Short Street."  The instruction further provided, "You have heard testimony about two choking incidents.  You must unanimously find which, if any, of these incidents the Defendant is guilty of."  We presume juries follow their

---

[4]     The victim provided this testimony when defense counsel asked on cross-examination whether Appellant had choked her "again" outside his residence before dragging her inside.

instructions. *State v. Dunlap*, 187 Ariz. 441, 461, 930 P.2d 518, 538 (App. 1996). The jury instructions were more than adequate to ensure the jury's verdict on the charge of aggravated assault was unanimous and protect Torres from any harm from an allegedly duplicitous charge.

**¶9** Finally, "Arizona Rule of Criminal Procedure 13.5(e) provides that 'no issue concerning a defect in the charging document shall be raised other than by a motion filed in accordance with Rule 16.' Rule 16.1(b) requires that such motions be filed at least twenty days before the trial; Rule 16.1(c), in turn, provides that any motion not timely filed is 'precluded.'" *State v. Anderson*, 210 Ariz. 327, 335-36, ¶ 16, 111 P.3d 369, 377-78, *supplemented by* 211 Ariz. 59, 116 P.3d 1219 (2005). The portions of the aggravated assault charge that Torres claims rendered it duplicitous existed in the original charge, yet Torres raised no claims of duplicity until two days before trial. Therefore, any challenge to the charging document was precluded as untimely, and the trial court did not err when it dismissed Torres's challenges to the information as untimely. *See id.* at 336, ¶¶ 17-18, 111 P.3d at 378.[5]

*II.     Sentencing Torres as a Category Two Repetitive Offender*

**¶10** Torres argues the trial court erred when it sentenced him as a category two repetitive offender pursuant to A.R.S. § 13-703(B)(2), which provides in relevant part that a person shall be sentenced as a category two repetitive offender if the person has one historical prior felony conviction. A category two repetitive offender is subject to the enhanced sentencing provisions of A.R.S. § 13-703(I). Due to the age and class of Torres's prior convictions, the only conviction he had that could qualify as a "historical prior felony conviction" was his conviction for aggravated driving under the influence of intoxicating liquor ("DUI") while a minor

---

[5] Torres did not invite any error because he did nothing to inject the allegedly duplicitous language into the case. Torres filed a motion to dismiss the information as duplicitous, and the court denied his motion. That Torres later agreed to the State's proposed amendments to the information in exchange for jury instructions that ensured a unanimous verdict for aggravated assault is of no matter. The original charge for aggravated assault contained the identical, allegedly duplicitous language of the amended charge; the original charge simply contained additional language. Therefore, the language at issue would have been part of the case regardless whether the court granted the motion to amend and regardless of any action by Torres.

was present.  *See* A.R.S. § 28-1383(A)(3).  Torres committed that offense in July 2000, and the sentencing court initially placed him on probation in April 2001.  A conviction for aggravated DUI is a historical prior felony conviction regardless of the age of the offense.  A.R.S. § 13-105(22)(a)(iv).

¶11        Torres argues the trial court could not sentence him as a category two repetitive offender because the State failed to prove he had a prior conviction for aggravated DUI and because the trial court failed to formally state on the record that it found he had a prior conviction for aggravated DUI.  When the State alleges a defendant has a prior conviction, the State must properly prove the existence of that prior conviction.  *State v. Nash*, 143 Ariz. 392, 403, 694 P.2d 222, 233 (1985).  The State must prove both that (1) the defendant in the present case and the one convicted in the prior case are the same person, and (2) there was a prior conviction.  *Id.*  In the absence of the admission of a defendant, the State must prove a prior conviction with extrinsic evidence, such as a certified copy of a judgment of conviction or minute entry, expert comparison of a fingerprint card with a fingerprint on the sentencing minute entry, testimony of witnesses, or photographs of the defendant.  *See, e.g., id.*  Here, the State sought to prove the existence of Torres's prior aggravated DUI through the testimony of a fingerprint expert who compared the fingerprints on Torres's fingerprint card with the fingerprints on court sentencing documents.

¶12        The record on this issue is not a model of clarity.  The State sought to prove Torres had several prior convictions for misdemeanors and felonies, not just the one historical prior felony conviction necessary to sentence him as a category two repetitive offender.  The fingerprint expert compared the fingerprints from certified copies of numerous court sentencing documents with the fingerprints on Torres's fingerprint card from the Winslow Police Department.  During discussion of those documents, the witness and counsel did not always identify the exhibit number of the document to which they referred, thereby making it difficult to identify the specific document discussed at various points in the hearing.  To further muddy the waters, when the witness and counsel did reference documents by exhibit number, they referenced exhibits previously admitted at trial numbered one through five as well as new exhibits admitted at the sentencing hearing numbered one through eight.  This resulted in the witness and counsel discussing different exhibits marked one through five without always identifying if it was trial exhibit one, etc., or hearing exhibit one, etc.  Further, discussions of exhibits frequently occurred without reference to the contents of the exhibit sufficient to permit identification of the exhibit.

**¶13** Regardless of the clarity of the record, however, when we view the record in its entirety, the State did ultimately prove Torres was the same person convicted of aggravated DUI in 2000. When the State asked the witness if he had compared the fingerprints on trial exhibits one through five and hearing exhibits one through eight, the witness responded, "Through -- I compared these three that were previously admitted to this print here on the documents, Superior Court of Arizona, County of Navajo, with CR numbers 002000387 [sic] and 0020030636. And I compared this particular -- it's a thumb print, to the prints, the known prints of Mr. Torres." The witness then testified all the prints he compared came from the same person - Torres. The witness later testified he had determined the fingerprint found on an unidentified document with cause number 20000387 was Torres's. Although the witness did not identify all the exhibit numbers for the documents he examined with cause number CR 0020000387, he testified that all of the prints he examined on the documents with cause number CR 0020000387 matched Torres's known prints. CR 0020000387 was the cause number for Torres's prior aggravated DUI case. Every certified document in the record with that cause number that has a fingerprint on it identifies Torres as the defendant and identifies his conviction for aggravated DUI. Despite the record's shortcomings, this was sufficient to prove Torres had a historical prior felony conviction.

**¶14** Regarding the trial court's failure to formally state on the record that the State had successfully proven Torres had a historical prior felony conviction, the absence of such language does not mandate reversal. Once the fingerprint expert completed his testimony, the State asked the court twice to rule on whether Torres had a historical prior felony conviction. The court indicated it would rule after Torres's counsel had completed his argument. During his argument, defense counsel argued repeatedly that the State had failed to prove Torres had a prior felony conviction for DUI. When defense counsel completed his remarks, the trial court did not formally rule that the State had successfully proven Torres had a historical prior felony conviction. The court, however, did discuss with counsel the presumptive sentences for a category two repetitive offender, and in turn sentenced Torres to the presumptive sentences for a category two repetitive offender. Although the court should have made a formal finding on the record, the record sufficiently demonstrates the court found the State successfully proved Torres had a historical prior felony conviction.

### III. The Imposition of Consecutive Sentences

**¶15** Torres argues the trial court erred when it imposed consecutive sentences. In the title of this section of his opening brief, Torres argues the trial court erred when it ordered the sentence for aggravated domestic violence to run consecutive to the sentence for kidnapping. The only argument and analysis Torres provides in his opening brief, however, concerns how the trial court erred when it ordered the sentence for *aggravated assault* to run consecutive to the sentence for kidnapping. (The court ordered the sentence for aggravated assault to run concurrent with the sentence for kidnapping, not consecutive to that sentence.) This is not a mere typographical error. Torres's entire argument in his opening brief is presented in the context of kidnapping and aggravated assault, the elements of those two offenses, and the evidence admitted at trial to support those two counts.

**¶16** "In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised." *State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989). Torres's opening brief presents no argument or authority to support the proposition that the trial court erred when it ordered the sentence for aggravated domestic violence to run consecutive to the sentence for kidnapping. The failure to argue a claim on appeal constitutes abandonment and waiver of that claim. *Id*.; *Bolton*, 182 Ariz. at 298, 896 P.2d at 838. Identifying the issue correctly in the title of this portion of the brief is not sufficient to present the issue for appellate review. *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101, 94 P.3d 1119, 1147 n.9 (2004) ("Merely mentioning an argument is not enough[.]"). Further, although Torres presents a new argument in his reply brief regarding how the court should not have ordered the sentence for aggravated domestic violence to run consecutive to the sentence for kidnapping - and does so without acknowledging he argued the wrong issue in his opening brief - we will not consider arguments or issues first raised in a reply brief. *See State v. Watson*, 198 Ariz. 48, 51, ¶ 4, 6 P.3d 752, 755 (App. 2000).

**¶17** Even if Torres had argued the correct issue, we would find no error. Under A.R.S. § 13-116, "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." To determine whether the trial court could impose consecutive sentences, we apply the following test:

The first step in the analysis is to determine which crime arising out of the incident is the "ultimate crime." The "ultimate crime" is the crime which has the factual nexus to all the other crimes. The ultimate crime will usually be the primary object of the episode, and it will usually be the most serious crime committed on the given occasion. Once the ultimate crime is determined, the test to be applied is as follows. If, considering all of the facts of the incident and subtracting the facts necessary to convict of the ultimate crime, the remaining facts satisfy the elements of the remaining crime(s), then multiple punishments *may* be permissible. Assuming that this first step is satisfied, multiple punishments are ordinarily permissible only if (1) given the entire criminal episode, the defendant could have committed the ultimate crime without committing the other crime(s) or (2) in committing the other crime(s), the defendant caused the victim to suffer additional risk or harm beyond that inherent in the ultimate crime.

*State v. Eagle*, 196 Ariz. 27, 33, ¶ 27, 992 P.2d 1122, 1128 (App. 1998) (emphasis in original) (citations omitted), *aff'd*, 196 Ariz. 188, 994 P.2d 395 (2000).

**¶18** To convict Torres of kidnapping as charged, the jury had to find he knowingly restrained the victim with the intent to inflict death, physical injury, or a sexual offense on her. *See* A.R.S. § 13-1304(A)(3). As charged in this case, the word "'[r]estrain' means to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person." A.R.S. § 13-1301(2). Restraint is without consent if it is accomplished by physical force. A.R.S. § 13-1301(2)(a). When we subtract the facts necessary to support the elements of kidnapping, the remaining facts satisfy the elements of aggravated domestic violence. To convict Torres of aggravated domestic violence as charged, the jury had to find he and the victim had a child together, he recklessly caused a physical injury to the victim, and he did so within eighty-four months of committing two other domestic violence offenses. *See* A.R.S. §§ 13-3601.02(A) (defining aggravated domestic violence); -3601(A)(2) (defining "domestic violence" offenses); -1203(A)(1) (defining assault by recklessly causing any physical injury). Based on the evidence introduced at trial, Torres could have committed the kidnapping without committing aggravated domestic violence based on reckless assault. The aggravated domestic violence also

caused the victim to suffer additional risk or harm beyond that inherent in ordinary kidnapping, which does not require any physical harm. Therefore, the trial court did not err when it ordered that Torres serve his sentence for aggravated domestic violence consecutive to his sentence for kidnapping.

## IV. *Admission of Evidence of Paternity*

**¶19** Torres contends the trial court erred when it admitted evidence the State did not disclose until the second day of trial. During Torres's opening statement, defense counsel argued the victim had been Torres's girlfriend for thirteen years, but they did not live together. Counsel further argued the victim would not be able to testify "that she has ever had a paternity test or [has] any legal document" proving Torres's paternity of the victim's children. As noted above, one element of aggravated domestic violence as charged in this case is that the defendant and the victim must have had a child together.

**¶20** Before trial began the next morning, the State disclosed a superior court judgment and order that not only identified Torres and the victim as the parents of two children, but ordered Torres to pay child support. The State argued the judgment and order were relevant to rebut Torres's opening statement. Defense counsel objected, arguing the State had not previously disclosed the evidence. The court held Torres's opening statement "opened the door" to the evidence and overruled the objection. The trial court admitted the judgment and order during the State's direct examination of the victim.

**¶21** We review for an abuse of discretion the court's decision not to exclude evidence due to untimely disclosure. *See State v. Rienhardt*, 190 Ariz. 579, 586, 951 P.2d 454, 461 (1997). Due process requires that the State disclose material evidence to a defendant in a timely manner. *State v. Gulbrandson*, 184 Ariz. 46, 63, 906 P.2d 579, 596 (1995). The State must provide the defendant a list of all documents the State "intends to use at trial." Ariz. R. Crim. P. 15.1(b)(5). "[T]he underlying principal of Rule 15 is adequate notification to the opposition of one's case-in-chief in return for reciprocal discovery so that undue delay and surprise may be avoided at trial by both sides." *State v. Stewart*, 139 Ariz. 50, 59, 676 P.2d 1108, 1117 (1984) (citation omitted).

**¶22** We find no abuse of discretion. First, Torres never identified lack of paternity as a defense to the count of aggravated domestic violence. Once a defendant proceeds with a previously undisclosed

defense, the State may introduce rebuttal evidence that it has not otherwise disclosed. *State v. Sanchez*, 130 Ariz. 295, 300-01, 635 P.2d 1217, 1222-23 (App. 1981). Second, Torres testified he had seen the judgment and order before. Also, defense counsel acknowledged Torres was aware of the paternity proceedings, but could not file a response. There is no violation of Rule 15.1 for the failure to disclose a document if the defendant knows of the existence of the document, knows the contents of the document, and can obtain the document just as easily as the State. *See State v. Armstrong*, 208 Ariz. 345, 357, ¶¶ 57-58, 93 P.3d 1061, 1073 (2004). Finally, Torres testified several times that he was the father of the victim's children. The judgment and order were, therefore, cumulative of other evidence that established Torres's paternity.

## CONCLUSION

¶23 We affirm Torres's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh